IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOAN TERESI,
     Plaintiff,

vs.                                 Case No. 5:06cv134/RS/EMT

MICHAEL J. ASTRUE,[1]
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act.

     Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] Michael J. Astrue succeeded Jo Anne B. Barnhart, and is presently the Commissioner of Social Security. Therefore, he is automatically substituted as Defendant. *See* Fed. R. Civ. P. 25(d)(1).

I.  PROCEDURAL HISTORY

This suit involves an application made for DIB under Title II of the Act, 42 U.S.C. §§ 401–434. Plaintiff's application was denied initially and on reconsideration (Tr. 14).[2] On November 21, 2005, following a hearing, an administrative law judge ("ALJ") rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Act (Tr. 14–21). On April 26, 2006, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review (Tr. 5–8). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998). This appeal followed.

II.  FINDINGS OF THE ALJ

On November 21, 2005 (date of ALJ's decision), the ALJ made several findings relative to the issues raised in this appeal (Tr. 14–21):

1) Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits through November 21, 2005.

2) Plaintiff has not engaged in substantial gainful activity since April 14, 2003, the alleged onset of disability (*see* Tr. 15).[3]

3) Plaintiff's chronic obstructive pulmonary disease ("COPD"), obesity, diabetes mellitus, and hypertension are considered "severe" based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)).

4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5) Plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the ALJ's decision.

6) Plaintiff has the following residual functional capacity ("RFC"): sit eight hours with ability to stand every thirty minutes for one or two minutes to loosen up; stand for fifteen minutes at a time for a total of two hours; walk for fifteen minutes at a time

---

[2] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on September 11, 2006 (*see* Docs. 7, 8).

[3] Thus, the time frame relevant to this appeal is April 14, 2003 (alleged onset) to November 21, 2005 (date last insured).

>   for a total of two hours; lift or carry frequently up to ten pounds and occasionally up to fifteen pounds; avoid concentrated or excessive exposure to pulmonary irritants (dust, fumes, extremes in temperature, humidity); cannot talk more than fifty percent of the time; cannot physically work at a fast paced job.
>
> 7) Plaintiff's past relevant work as a personnel records clerk did not require the performance of work-related activities precluded by her RFC (20 C.F.R. § 404.1565).
>
> 8) Plaintiff's medically determinable severe impairments do not prevent her from performing her past relevant work.
>
> 9) Plaintiff was not under a "disability" as defined in the Act, at any time through November 21, 2005, the date of the ALJ's decision (20 C.F.R. § 404.1520(f)).

(Tr. 20–21).

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must

then prove she cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

    A.   Personal History

At the time of Plaintiff's hearing, she was fifty-four years old with a high school education (Tr. 15, 42, 92). Her past work experience includes employment as a cashier, stock clerk, pharmacy technician, directory assistance operator, and personnel records clerk (Tr. 14–15, 25, 86). Plaintiff alleges she became disabled on April 14, 2003, due to COPD, hypertension, and emphysema (Tr. 86). She stated that she was forced to stop working because she was "unable to breathe correctly" and experienced shortness of breath (*id.*). Plaintiff elaborated on her difficulties when she testified before the ALJ. Notably, Plaintiff testified that when she worked at Bell South as an operator, she frequently needed to use an inhaler because she would become "out of breath" because she talked too fast (Tr. 25). She also noted that she could sit or walk for ten to fifteen minutes at time and stand for only ten minutes at a time because her ankles swelled (Tr. 26–27). She testified that some of her medications made her tired and dizzy (Tr. 27). In particular, Plaintiff noted that Toprol makes her dizzy (*id.*). She further testified that she twice had surgery on her right wrist to remove ganglion cysts, and she noted that her fingers "cramp up" (Tr. 31). Finally, Plaintiff noted that she has diabetes, but it was under control with medication (Tr. 31–32).

Regarding daily activities, Plaintiff testified that she basically spent most of her day in a recliner, and her husband did most of the driving because of the side effects of the Toprol (Tr. 27). Plaintiff stated that her husband performed the household chores, and if she went shopping she used an electric cart (Tr. 30). Plaintiff stated she slept only about five hours per night, needed to nap during the day, and was generally tired and had trouble concentrating (Tr. 29–30). Finally, Plaintiff noted that she had only about two or three good days per month (Tr. 29).

    B.   Relevant Medical History

The medical evidence of record establishes that Plaintiff was hospitalized overnight on June 29, 2001, for observation after complaining of chest pain (Tr. 16). Plaintiff reported she had been working frantically at her job as a telephone operator, answering 1200 calls a day with 24 seconds between calls, when her left arm went weak and her left hand felt like it had pins and needles in it (Tr. 16). A Duplex Doppler Carotid Sonogram was taken which showed nonsignificant stenosis

(*id.*).  Additionally, an EKG showed no acute changes, and the cardiology consult noted that Plaintiff's chest pain was "atypical for heart" (Tr. 16, 229).  Plaintiff's chest pain was treated with nitroglycerin and a Z-pack.  Her asthmatic bronchitis was treated with nebulizer treatment (Tr. 16).  Plaintiff was discharged, and her final diagnoses were chest pain and COPD with bronchitis (Tr. 16, 335).

On July 12, 2001, Plaintiff presented to Syed Gilani, M.D., for her first office visit after her hospitalization (Tr. 222).  Dr. Gilani's records demonstrate that Plaintiff was doing well (Tr. 16).  She had decreased her smoking inhalation from one pack of cigarettes a day to two cigarettes a day (*id.*).  She reported feeling better after starting on her medication for bronchitis, with better breathing and no chest pain (*id.*).  An office pulmonary function test result was consistent with some obstructive element (*id.*).  Dr. Gilani assessed chronic bronchitis secondary to chronic tobacco abuse (*id.*).

On August 30, 2001, Plaintiff's next office visit with Dr. Gilani, Plaintiff was pain free, and her wheezing was better since she had stopped smoking, but she had gained weight and now weighed 232 pounds (Tr. 16, 218).  Dr. Gilani directed Plaintiff to continue with her medications (Tr. 16).  In November 2001, Dr. Gilani assessed Plaintiff with obesity, with a body mass index of more than forty, and COPD with asthmatic bronchitis (*id.*).

Plaintiff had a number of diagnostic tests performed (*id.*; Tr. 153).  An April 2002 hepatitis panel was normal (*id.*).  Iron studies were normal (*id.*).  Antimitochondrial antibody and smooth muscle antibody were negative (*id.*).  An August 30, 2002 ANA was normal, and a physical examination in September 2002 revealed that Plaintiff was "in no apparent distress" (Tr. 153–54).

On March 6, 2003, Plaintiff returned to Dr. Gilani and reported concern about her weight (Tr. 16, 180).  At that time she weighed 284 pounds (Tr. 16).  Her thyroid function test was normal, and her cortisol level was appropriate (Tr. 16–17).  In April 2003, Dr. Gilani prescribed Meridia to aid in weight loss, and Plaintiff was counseled about weight reduction (Tr. 17, 177).

On November 21, 2003, Dr. Gilani noted that Plaintiff's fasting blood sugar was 138 (Tr. 17).  On December 5, 2003, Dr. Gilani assessed diabetes and prescribed Glucotroix (*id.*).  Plaintiff was also treated for COPD and hypertension, but she still had some shortness of breath; however, on April 12, 2004, Plaintiff's shortness of breath was noted to be stable (*id.*).  A January 25, 2005 pulmonary function test showed moderate obstructive pulmonary impairment (Tr. 337).

C.      Other Information Within Plaintiff's Claim File

J. Patrick Peele, M.D., a state agency medical consultant, reviewed the record at the initial level on July 22, 2003, and completed a Physical RFC Assessment form (Tr. 162–69). Dr. Peele concluded that Plaintiff could perform work at the medium exertional level that did not require her to more than occasionally[4] lift or carry (including upward pulling) 50 pounds; frequently[5] lift or carry (including upward pulling) 25 pounds; and stand, walk, or sit (with normal breaks) about six hours in an eight-hour workday (Tr. 17, 163). He also found that Plaintiff had the unlimited ability, subject to the above restrictions, to push or pull (including operation of hand or foot controls) (Tr. 163). He believed Plaintiff should only occasionally climb ladders, ropes, or scaffolds, and stoop, kneel, crouch or crawl, but Plaintiff could frequently climb ramps or stairs and balance (Tr. 164). Plaintiff had no manipulative limitations (that is, to reach, handle, finger or feel), nor any visual or communicative limitations (Tr. 165–66). Finally, Dr. Peele opined that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, or poor ventilation, and concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, and hazards such as machinery or heights (Tr. 166).

N.L. Kopitnik, D.O., J.D., another state agency medical consultant, reviewed the record at the reconsideration level, on November 15, 2003 (Tr. 234–41). Dr. Kopitnik concluded that Plaintiff could perform work at the light exertional level that did not require more than occasional lifting of up to twenty pounds and frequent lifting of up to ten pounds (Tr. 18, 235). He also found that Plaintiff could stand, walk, or sit about six hours in an eight-hour workday and had the unlimited ability, subject to the aforementioned restrictions, to push or pull (Tr. 235). Dr. Kopitnik opined that Plaintiff had the following "occasional" postural restrictions: climbing ramps, stairs, ladders, ropes, and scaffolds, and balancing, stooping, kneeling, crouching, and crawling (*id.*). Finally, Dr. Kopitnik noted that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., but she had no other environmental limitations and no communicative, manipulative, or visual limitations (Tr. 233–38).

---

[4]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous) (Tr. 162).

[5]"Frequently" means occurring 1/3rd to 2/3rds of an an 8-hour workday (cumulative, not continuous) (Tr. 162).

Kamal Zawahry, M.D., a consulting physician, examined Plaintiff on May 23, 2005 (Tr. 338). He diagnosed Plaintiff with COPD, bronchial asthma, diabetes mellitus, hypertension, hyperlipidemia, and "s/p" fracture of the right ankle[6] (*id.*; Tr. 338–39). Dr. Zawahry noted that Plaintiff's movement was limited due to her recent fracture, and he opined that Plaintiff would not be able to do work-related activities (Tr. 339). Dr. Zawahry was provided with a "supplemental questionnaire," and he refined his opinion (*see* Tr. 340–43). Dr. Zawahry opined that Plaintiff could occasionally lift or carry twenty pounds and had no manipulative, visual, or communicative limitations (Tr. 18, 340–42). However, Plaintiff would be limited to standing or walking less than two hours and sitting less than six hours in an eight-hour workday (Tr. 340–41). Her ability to push or pull would also be limited in her upper and lower extremities, and Plaintiff should never climb, balance, kneel, crouch, crawl, or stoop (Tr. 341–42). Dr. Zawahry noted that these limitations are based on Plaintiff's severe obstructive airway disease (*id.*).[7]

## V. DISCUSSION

Plaintiff raises four issues on appeal: 1) the ALJ erred in failing to find Plaintiff's depression severe at step two, or alternatively, erred in failed to further develop the record regarding Plaintiff's depression; 2) the ALJ erred in finding Plaintiff "not totally credible"; 3) the ALJ erred in his consideration of Plaintiff's COPD at step three; and 4) the ALJ failed to give proper weight to the opinion of Dr. Zawahry, a consultative examiner (Doc. 14 at 8).

### A. ALJ's Consideration of Plaintiff's Depression

Dr. Gilani was Plaintiff's primary treating physician, and he saw Plaintiff periodically from June 2001 through December 2004 (*see* Tr. 170–233; 294–329). On June 5, 2003, Plaintiff first

---

[6]Plaintiff submitted evidence to the Appeals Council after her hearing reflecting that she had fallen, fractured her ankle, and had surgery in April 2005, which apparently is the injury noted by Dr. Zawahry (*see* Tr. 356–65). The court notes, however, that the evidence submitted by Plaintiff does not establish that this was a disabling injury. Moreover, even if the ankle fracture was disabling, Plaintiff failed to establish the 12-month durational requirement for disability. The records reflect that following surgery Plaintiff's wound looked good in July 2005, and Plaintiff was to start progressing her weight into an air cast (Tr. 362). In October 2005, Plaintiff's wound was completely closed and her skin looked fine (Tr. 357). Finally, in December 2005, Plaintiff's wound remained closed, and Plaintiff was in only moderate pain (Tr. 356). The file contains no records beyond December 2005.

[7]The medical evidence cited above in Parts IV.B and C is the same evidence as that noted by the ALJ in his decision, which the Commissioner has adopted (*see* Tr. 16–18; Doc. 15 at 2). Additionally, the Commissioner has adopted the medical evidence as set forth in Plaintiff's brief (Doc. 14 at 2–6; Doc. 15 at 2). Thus, the court will similarly adopt the ALJ's and Plaintiff's summaries of the medical record, as there appears to be no dispute over what is contained therein.

reported feeling depressed to Dr. Gilani (*see* Tr. 174). On that date, Dr. Gilani's notes reflect that Plaintiff "looks and fees[s] depressed, just lost job" (Tr. 174). Similarly, on October 24, 2003, Plaintiff reported feeling depressed and crying occasionally (Tr. 170). Dr. Gilani again noted that Plaintiff looked depressed; he also noted that Plaintiff had a flat affect but had no suicidal thoughts or plan (Tr. 170–71). Plaintiff was started on Zoloft (Tr. 171). On November 21, 2003, Plaintiff reported "severe depression" and stress due to the recent death of her brother who was murdered (Tr. 314). Plaintiff's Zoloft was increased (Tr. 315). On December 5, 2003, although Plaintiff made no specific complaints regarding her depression, Plaintiff reported some weakness associated with the increased dosage of Zoloft; thus, her Zoloft was decreased (Tr. 312–13). On February 5, 2004, Plaintiff noted she was "still feeling depressed" and had some ongoing family problems, and Dr. Gilani noted that Plaintiff looked depressed and had a flat affect (Tr. 310). It was decided that Plaintiff's Zoloft should be increased (Tr. 311). On March 4, 2004, Plaintiff reported that her depression was better (Tr. 308). On April 12, 2004, Plaintiff reported feeling depressed, but she also noted that her depression was better than before she started taking medication to control it (Tr. 306). On November 19, 2004, Plaintiff again reported feeling depressed, and she further indicated that she was not able to tolerate her medication (Tr. 296). On December 21, 2004, Plaintiff reported doing better on Prozac, although Dr. Gilani noted that Plaintiff continued to "look depressed" (Tr. 294–95). Dr. Gilani diagnosed Plaintiff with "depressive disorder NEC" on several office visits (*see, e.g.*, Tr. 304, 307, 309, 311).

Plaintiff asserts that the ALJ erred in failing to "consider, evaluate, or address" Plaintiff's depressive disorder, as diagnosed by Dr. Gilani, and the side effects of the medications prescribed for her condition[8] (Doc. 14 at 8–9). Further, Plaintiff asserts that the ALJ erred in failing to find Plaintiff's depression "severe" at step two (*id.* at 8). Finally, Plaintiff suggests that the Commissioner might have further erred in failing to develop the record by ordering a consultative examination to explore the severity of Plaintiff's depression (*id.* at 9).

Although the ALJ did not specifically consider depression in his decision, he indicated that he considered "all the evidence of record" in assessing Plaintiff's claim (Tr. 14). Moreover, based on the evidence before him, it was not necessary to specifically consider Plaintiff's depression.

---

[8]The side effects of Plaintiff's medications will be discussed in Part V.B, *infra*.

Initially, the court notes that Plaintiff did not allege mental problems as a basis for disability in connection with her application (*see* Tr. 86, 88, 90–91, 99, 117, 119, 122, 124). Similarly, Plaintiff failed to mention depression or any other mental impairment during the administrative hearing on March 8, 2005 (Tr. 24–34), or during her May 2005 consultative examination with Dr. Zawahry (Tr. 338–39). Additionally, Plaintiff's attorney did not allege or even mention depression or mental limitations as a basis of contention in her letter to the Appeals Council dated January 9, 2006 (Tr. 4, 354–55). The ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). *See also* 20 C.F.R. § 404.1512 (requiring that a claimant "bring to our attention everything that shows that you are . . . disabled"). Thus, the ALJ was not required to order a consultative mental evaluation, as Plaintiff failed to present a depression-related claim.

Furthermore, despite the notations of depression by Plaintiff's treating physician, the evidence does not show that Plaintiff received or sought treatment from a mental health professional[9] (Tr. 91, 118, 135, 137–353). Although Plaintiff was prescribed medication for her depression by Dr. Gilani, she did not participate in any mental health counseling or seek specialized treatment from a psychologist or psychiatrist. Absence of treatment indicates that a mental impairment is nonsevere. *See* Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992). Moreover, the record shows no significant observed or assessed limitations due to depression or any other mental impairment (Tr. 170–77, 180–81, 187–88, 193–94, 242, 252–53, 256–57, 294–322, 338–39). The mere presence of a mental disturbance can not be deemed severe absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990).

Finally, although the ALJ must determine at step two whether the claimant has a severe impairment, the burden at this step is on the claimant. Chester, 792 F.2d at 131. Here, Plaintiff failed to meet her burden, as Dr. Gilani's records alone do not establish that Plaintiff's depression was severe; indeed, those records demonstrate that Plaintiff's depression was well controlled by medication. A medical condition that can reasonably be remedied either by surgery, treatment, or

---

[9]Dr. Zawahry specializes in pulmonary and internal medicine (*see* Tr. 338).

medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted)). Plaintiff has offered nothing other than Dr. Gilani's records to meet her burden and has raised this claim only at this level of review. Further, Plaintiff has not shown that she had any significant limitations due to depression or any other mental impairment. Therefore, the ALJ did not err in failing to specifically address Plaintiff's depression or find it severe at step two of his analysis.

      B.      Credibility Finding

Plaintiff next alleges the ALJ erred in finding her complaints to be "not totally credible" (Doc. 14 at 9).

Pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be

disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker, 826 F.2d at 1003). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor, 786 F.2d at 1054; Holt, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Dept. of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[10] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, *supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he

---

[10] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, the ALJ offered several reasons for discounting Plaintiff's "symptom-related limitations" (*see* Tr. 18). First, the ALJ stated that he was not convinced Plaintiff discontinued working due to a disability because the record reflects that Plaintiff actually lost her job (Tr. 18). In June 2003, Plaintiff reported to her doctor that she lost her job (Tr. 174). On her Disability Report dated June 5, 2003, Plaintiff stated that she stopped working on April 14, 2003, and wrote "[a]fter working 5 years at this job, I was fired for unsatisfactory work performance" (Tr. 86). This evidence led the ALJ to question whether Plaintiff stopped working due to her alleged disability, and further question whether it was Plaintiff's unemployment that actually motivated her to apply for disability benefits (Tr. 18).

Courts have found it significant when a claimant leaves work for reasons other than their alleged disability. *See* Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (claimant stopped working because she was fired, not because of her disability); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (where claimant left because the job ended, it was not unreasonable for the ALJ to find that this work "suggests that his impairments are not as severe as alleged"); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) ("It is also important to note that Weber testified that she left her first bathroom attendant job, not because of an inability to perform the work, but because of lack of transportation, and she left a second similar position because she needed dental care . . . ."). Moreover, in the instant case, Plaintiff sought additional employment as a luggage screener after she was fired (*see* Tr. 26). Although the physical demands of that particular job were too much for Plaintiff, nothing suggests that she was incapable of performing a less physical job (*id.*). Furthermore, her desire to return to work is inconsistent with disability and indicates that she did not view her pain or limitations as disabling. *See* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994) (claimant's statements that he was seeking work are inconsistent with disability).

Additionally, the ALJ noted that Plaintiff's credibility was called into question because she failed to follow prescribed treatment (Tr. 19). Specifically, the ALJ noted that Plaintiff failed to lose weight as recommended by her physician (*id.*). Indeed, as the ALJ noted, Plaintiff's weight

increased, despite a battery of tests finding nothing physically wrong with Plaintiff that would prevent her from losing weight (*id.*). Moreover, Plaintiff was prescribed Meridia to assist in her weight loss — to no avail (Tr. 17, 177). The ALJ properly considered this evidence as one of several factors which eroded Plaintiff's credibility (Tr. 19). *See* Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported . . . ."). Furthermore, even though Plaintiff failed to lose weight as recommended, the evidence indicates that when Plaintiff was compliant with other recommendations and prescribed treatment, her conditions, including hypertension, diabetes, and shortness of breath, improved and were controllable (Tr. 18–19, 31–32, 110, 299–300, 304, 306, 308, 310–11, 325–26). Medical conditions that can reasonably be remedied by treatment or medication are not disabling. Dawkins, 848 F.2d at 1213.

As another example of Plaintiff's failure to comply with recommended treatment, the court notes that the record demonstrates a significant gap in Plaintiff's treatment. On March 6, 2003, Dr. Gilani's notes reflect that Plaintiff had not been seen since August 2002 (Tr. 180). Dr. Gilani further noted that Plaintiff "did not follow up with Dr. Reddy . . . and she did not come to us as well" (*id.*). Also on March 6, Dr. Gilani recorded Plaintiff's report that "she has been going okay" (*id.*). Dr. Gilaini was compelled to talk to Plaintiff and advise her to "follow up with us [(Dr. Gilani's office)] continuously and on a regular basis" (Tr. 181).

Finally, in weighing Plaintiff's credibility, the ALJ noted that the record did not document Plaintiff's allegations of medication side effects. On the contrary, the ALJ noted, "it appears [Plaintiff's] regime has produced medication efficacy" (Tr. 18). In support, the ALJ referenced Dr. Gilani's progress notes, which, as noted *supra*, repeatedly made reference to the fact that Plaintiff's physical conditions were well controlled with medication, and the ALJ noted Plaintiff's report that inhalers helped her breathing (Tr. 18–19).

Plaintiff asserts that the ALJ erred in finding that the record contained no documentation of medication side effects, noting that Plaintiff complained of tachycardia, tiredness, weakness associated with Zoloft, and an inability to tolerate Lexapro and Zoloft (Doc. 14 at 9). Indeed, the record contains some documentation of Plaintiff's complaints regarding the side effects of her medication. For example, Dr. Gilani noted in August 2001 that Plaintiff's Albuterol might be causing tachycardia (rapid or irregular heartbeat) (Tr. 219). However, Toprol was additionally

prescribed to counter this side effect (Tr. 219), and on Plaintiff's next visit, her physician continued to recommend medication on an "as needed" basis, despite the tachycardia.  Thus, it appears that Dr. Gilani was not overly concerned with this particular side effect, and there is nothing to suggest that tachycardia would interfere with Plaintiff's ability to perform work.  On August 16, 2004, Plaintiff reported feeling tired, but she did not report that the tiredness was associated with any of her medications, and she was continued on the same medications (Tr. 300–01).  Moreover, at Plaintiff's hearing, she testified that her tiredness was related to her breathing, not the side effects of her medication (Tr. 29).  Additionally, Plaintiff reported on December 5, 2003, that increased dosages of Zoloft made her weak (Tr. 312); however, based on her report, Dr. Gilani reduced her dosage to the previous level (*see* Tr. 315 (reflecting that Plaintiff was prescribed Zoloft 100 mg in November 2003); Tr. 313 (reflecting a decrease to Zoloft 50 mg in December 2003)).  In February 2004, Plaintiff asked to increase the dosage back to 100 mg (*see* Tr. 311), and on Plaintiff's next visit in March 2004 Plaintiff reported that her depression was better, her mood and affect were noted to be normal, her judgement and insight were noted to be appropriate, and Plaintiff was continued on Zoloft 100 mg (Tr. 308–09).  In April 2004, Plaintiff specifically reported that her depression was better with medication than without, she made no complaints of any negative side effects, and her Zoloft was continued (Tr. 306–07).  Similarly, Plaintiff complained of no negative side effects in July 2004 or October 2004 (Tr. 298, 303).  However, Plaintiff reported in November 2004 that she could not tolerate Lexapro and Zoloft (Tr. 296).  The nature of Plaintiff's reported intolerance in unclear, but Dr. Gilani continued her on the same medications and added Librax (Tr. 297).  Again, it would appear that the benefits of continuing Plaintiff on the same medications outweighed any disadvantages associated with the side effects, or alternatively, that the physician did not feel that the side effects were severe enough to discontinue the medications.  Either way, the record does not demonstrate that Plaintiff's medication side effects would interfere with her ability to perform work. Indeed, on Plaintiff's final visit with Dr. Gilani, on December 21, 2004, it was noted that Plaintiff was in "no distress," and there is no indication that she complained of any medication side effects. Moreover, the court notes that Plaintiff did not state that she quit working due to the side effects of any medications or that they interfered with her ability to perform work (*see, e.g.*, Tr. 25, 86). Although Plaintiff testified that her medications made her tired, the gist of her testimony was that she could not work because she did not have the physical capacity to work (*see* Tr. 25–27).  Finally,

Plaintiff testified that it was the Toprol that made her dizzy (Tr. 27), and the ALJ was correct in noting that this particular side effect was not documented in the record (*see, e.g.*, Tr. 215 (Plaintiff reported tachycardia as a side of effect of Combivent, but made no mention of any side effect of Toprol); Tr. 211, 213 (Plaintiff's Toprol was increased and Plaintiff made no reports of dizziness)).

Therefore, although the ALJ might have misspoke to some degree when he stated that "[t]he record does not document allegations of medication side effects" (*see* Tr. 18), as some of Plaintiff's complaints were in fact documented, any such error is harmless. Misstatements by an ALJ can constitute harmless error. *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant); *see also* East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard).

The ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See* McCray v. Massanari, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001). While any one of the above inconsistencies alone might not be enough to find Plaintiff's subjective complaints not credible, certainly the totality of the inconsistencies provide, at the very least, substantial evidence supporting the ALJ's decision that Plaintiff was not credible. Because the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's testimony regarding his subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed. *See* Foote, 67 F.3d at 1562; MacGregor, 786 F.2d at 1054.

    C.    Combined Effects of Plaintiff's COPD and Obesity

Plaintiff asserts that the "ALJ filed to consider, evaluate and address the combined effects of obesity and COPD at step three" (Doc. 14 at 10).

As discussed *supra*, the ALJ found at step two that Plaintiff's COPD was severe, but he found at step three that this medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ indicated that in arriving at this conclusion he considered Listing § 3.02 (Chronic Pulmonary Insufficiency) (Tr. 17). Plaintiff alleges that the ALJ erred because he "considered only whether the COPD, separate

from any other severe impairment, met or equaled the criteria for listing 3.02" (Doc. 14 at 10). Plaintiff asserts that the ALJ was required to consider Listing 3.00(I), which discusses the effects of obesity on respiratory function (*id.*).

An examination of the ALJ's decision demonstrates that he indeed considered Plaintiff's obesity and its effect on her condition. Initially, the ALJ specifically found that Plaintiff's COPD and obesity were severe impairments (Tr. 16). Then, in determining Plaintiff's RFC, the ALJ noted that he considered "the multiple medical opinions, [and] the evidence and testimony" (Tr. 19). The ALJ even stated that Plaintiff's "excessive weight undoubtedly affects her respiratory system; especially since Dr. Gilani specifically assessed shortness of breath due to deconditioning and obesity" (Tr. 19, 177). The ALJ also noted that Plaintiff's RFC is "not inconsistent with [her] standing abilities and the atmosphere which aggravates her respiratory condition" (Tr. 19). Thus, the ALJ specifically noted that both atmospheric pollutants <u>and</u> Plaintiff's obesity affect her respiratory system, and he incorporated limitations into the RFC determination to accommodate the effects of both. The ALJ found the following RFC:

> [Plaintiff can] sit 8 hours with ability to stand every 30 minutes for one or two minutes to loosen up; stand for 15 minutes at a time for a total of two hours; walk for 15 minutes at a time for a total of two hours; lift and/or carry frequently up to 10 pounds and occasionally up to 15 pounds; [and Plaintiff must] avoid concentrated or excessive exposure to pulmonary irritants (dust, fumes, extremes in temperature, humidity); [Plaintiff] cannot talk more than 50 percent of the time; [and she] cannot physically work at a fast paced job.

(Tr. 19). In limiting Plaintiff's abilities to stand, walk, lift, talk, work at a certain pace, and work around concentrated or excessive exposure to pulmonary irritants, the ALJ reasonably accounted for all of Plaintiff's credible medical conditions or combination of conditions including COPD and obesity, as well as diabetes and hypertension (Tr. 16–19). All that is required in § 3.00(I) is that the ALJ "consider any additional and cumulative effects of obesity." 20 C.F.R. Part 404, Subpart P, App. 1, § 3.00(I). It is clear in the instant case that the ALJ complied with this obligation.

D.      Opinion of Dr. Zawahry, a Consultative Examiner

As discussed *supra*, Plaintiff was referred to Dr. Zawahry for a consultative examination, and Dr. Zawahry found that Plaintiff would be unable to perform work. Plaintiff alleges that the ALJ erred in rejecting this opinion (Doc. 14 at 11).

Initially, the court notes that Dr. Zawahry is a one-time consultative examiner; as such, his opinion is not entitled to deference. *See* McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)). Moreover, the question of whether a claimant is disabled (that is, unable to work within the strictures of the Social Security Act) is reserved to the Commissioner, not to a physician. *See* 20 C.F.R. § 404.1503. Furthermore, the ALJ articulated reasons for rejecting Dr. Zawahry's opinion (*see* Tr. 18).

The ALJ found that Dr. Zawahry's opinion was not supported by the record (Tr. 18). The ALJ first noted that Dr. Gilani's treatment notes indicate that Plaintiff had COPD, but they do not support the level of severity assessed by Dr. Zawahry (Tr. 18). Next, the ALJ correctly observed that Dr. Gilani never imposed functional limitations on Plaintiff (Tr. 18). The ALJ further noted that Plaintiff did not obtain a home nebulizer unit until July 2003, and that in March 2004, Plaintiff did not even complain of shortness of breath (Tr. 18, 308, 319). Moreover, the ALJ noted that in April 2004, Plaintiff's shortness of breath was noted to be stable (Tr. 306), and in December 2004, she reported that her breathing was better (Tr. 294). Furthermore, Dr. Zawahry actually assessed a greater lifting/carrying capacity than that assessed by the ALJ in his RFC determination (20 pounds occasionally versus 15 pounds occasionally) (Tr. 19, 340). Finally, the ALJ noted that "If [Plaintiff's] COPD was as severe as Dr. Zawahry indicated, it would have been reasonable to expect emergency room visits or hospitalizations. [Plaintiff] did not even require steroids." (Tr. 18). Similarly, if Plaintiff's condition was that severe, it is unlikely that she would have stopped seeing her treating physician from August 2002 through March 2003 (*see* Tr. 180). Based on the foregoing, the court finds that the ALJ properly rejected the opinion of Dr. Zawahry that Plaintiff was unable to work.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Based upon the foregoing, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 21st day of June 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**